UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANEY MORN,<br><br>                                        Plaintiff,<br><br>   v.<br><br>CITY OF SAN DIEGO, SDPD OFFICER BRET T. EDWARDS #SD6191,<br>                                        Defendants. | Case No. 3:25-cv-00261-JAH-DEB<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND DENYING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND TO INCORPORATE BY REFERENCE**<br><br>**[ECF No. 9]** |

Pending before the Court are the City of San Diego ("San Diego" or "the City") and Officer Bret T. Edwards' ("Officer Edwards") (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), and Request for Judicial Notice and to Incorporate by Reference in Support of Defendants' Motion to Dismiss, filed concurrently with Defendants' motion. ECF Nos. 9-1 ("Motion"), 9-2 ("Request for Judicial Notice" or "RJN"). Plaintiff Saney Morn ("Plaintiff") filed a response in opposition and Defendants filed a reply. ECF Nos. 12 ("Opp'n"), 13 ("Reply").

After a thorough review of the parties' submissions and for the reasons discussed below, the Court **DENIES** Defendants' Motion to Dismiss. The Court also **DENIES** Defendants' Request for Judicial Notice and to Incorporate by Reference.

BACKGROUND

On February 21, 2025, Plaintiff filed a First Amended Complaint alleging violations of his Fourth Amendment right to be free from unreasonable search and seizure against Officer Edwards, pursuant to 42 U.S.C. § 1983, and violations of California state law against San Diego and Officer Edwards for claims under the Bane Act, assault, battery, and negligence.  ECF No. 5 ("FAC").

The facts underlying this suit arise from a traffic stop on January 8, 2024 ("Subject Incident").  According to the Complaint, Officers Dante Parker and Cameron Watson decided to initiate a traffic stop after observing Plaintiff enter a car with tinted windows. FAC ¶¶ 27, 32.  Officers Parker and Watson also observed Plaintiff wearing a crossbody satchel as he entered his car and reported that "these satchels" are commonly used to "conceal various types of weapons, including firearms."  *Id.* ¶ 28.  The officers recognized Plaintiff because they stopped him at 54th Street and Federal Avenue for driving the same car with tinted windows on December 30, 2023.  *Id.* ¶¶ 34, 37.

Despite determining they would make a traffic stop before Plaintiff entered the vehicle for driving with tinted windows, in violation of California Vehicle Code § 26706(a), Officers did not initiate the stop until several minutes afterward, during which time Plaintiff failed to come to a complete stop prior to making a westbound turn.  *Id.* ¶¶ 32, 38–41.  After the stop was initiated, Plaintiff pulled over on the shoulder of the northbound I-805.  *Id.* ¶¶ 41–42.  At least six officers were on the scene and drew their firearms toward Plaintiff's car.  *Id.* ¶¶ 43–44.

Plaintiff did not immediately exit the vehicle despite Officers commanding that he do so.  *Id.* ¶¶ 45–46.  Instead, Plaintiff called 911 after pulling over out of fear of being killed or harassed by the officers.  *Id.* ¶¶ 46–47.  Plaintiff eventually exited the car and raised his hands in the air where they were visible to Officers, surrendering as directed.  *Id.* ¶¶ 48–49.  Plaintiff then threw his crossbody satchel and hat into the car and backed approximately 2.5 feet away from the car.  *Id.* ¶ 50.  After Plaintiff backed away from the car, Officer Edwards' ordered his police service dog ("K-9"), Magnus, to attack and bite

25-cv-0261-JAH

Plaintiff. *Id.* ¶¶ 53–54. After Plaintiff backed away from the dog; Magnus then jumped into Plaintiff's car. *Id.* ¶¶ 55–57. Despite the fact that Plaintiff was over ten feet from the car and the satchel, Officer Edwards did not recall Magnus. *Id.* ¶ 58. Instead, Officer Edwards instructed Magnus to attack again, causing Magnus to chase Plaintiff before jumping on Plaintiff and biting his arm and resulting in Plaintiff falling to the ground in pain. *Id.* ¶¶ 59–63, 83. Magnus continued to gnaw at Plaintiff's arm while Plaintiff was on the ground with three to four officers on top of him and three to four others surrounding him with their weapons drawn. *Id.* ¶ 64.

Plaintiff was subsequently told by Officers he was being charged with evading a peace officer in violation of California Penal Code § 2800.1(a) and obstruction under Penal Code § 148(a)(1), both misdemeanors. *Id.* ¶ 67. On June 25, 2024, Plaintiff submitted a timely tort claim, pursuant to the California Government Claims Act[1] ("GCA"), against the City of San Diego. *Id.* ¶ 16. The City acknowledged receipt of Plaintiff's claim on July 16, 2024, and later rejected Plaintiff's claim without identifying any deficiency in the submission despite Plaintiff's express request on August 6, 2024. *Id.* ¶¶ 17–18. Plaintiff then filed the instant lawsuit.

DISCUSSION

Defendants move to dismiss Plaintiff's state law claims for violations of the Bane Act, assault, battery, and negligence on the sole ground that Plaintiff failed to comply with the GCA. Mot. at 12. Defendants argue that Plaintiff fails to state a claim for excessive force under 42 U.S.C. § 1983 based on a factual challenge to the allegations in Plaintiff's FAC. Mot. at 13. Finally, Defendants move to dismiss all civil claims against Officer Edwards based on their argument that Officer Edwards is entitled to qualified immunity. Mot. at 19.

//

---

[1] Formerly known as the California Tort Claims Act, or the "TCA." Cal. Gov. Code § 810 et seq.

25-cv-0261-JAH

## I.   Legal Standard

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Claims need only be plausible, meaning a complaint need only allege enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Rule 12(b)(6) tests the sufficiency of the complaint. Fed. R. Civ. Pro. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* In reviewing a motion to dismiss, the Court must assume the truth of all factual allegations and construe all inferences in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (internal citation omitted).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal citation omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal citation and quotations omitted).

25-cv-0261-JAH

"Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990) (internal citation and quotation marks omitted). If the Court determines that a complaint fails to state a claim, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990) (internal citation and quotations omitted); *see also Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## II.   State Law Claims

In general, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Two doctrines permit consideration of materials beyond the pleadings without converting the motion to a summary judgment proceeding: judicial notice under Federal Rule of Evidence 201, and incorporation by reference. *Id.*

District courts may consider extrinsic evidence on which the "complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *See Daniels-Hall*, 629 F.3d at 998 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)) (internal quotation marks omitted). In so doing, a court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* (internal citations omitted).

Here, Defendants argue that dismissal of Plaintiff's state law claims is proper because "Plaintiff failed to comply with the California Government Claims Act when he did not file a claim for the [Subject Incident]." Mot. at 12. Defendants concede that the FAC properly alleges "Plaintiff filed a timely tort claim under the act on June 25, 2024, and that the claim was rejected by the City on August 6, 2024," but argue that "[t]he only claim filed by Plaintiff was for an incident that occurred at a different location on a different date" rather than for the Subject Incident. Mot. at 13. It follows that Defendants' sole

5

basis to dismiss Plaintiff's state law claims challenges Plaintiff's factual compliance with the GCA, and not the sufficiency of the allegations of the claims themselves.

Thus, in assessing Defendants' motion to dismiss Plaintiff's state law claims, the only issue for the Court to consider is whether Plaintiff complied with the requirements of the GCA prior to filing his state law claims with this Court.[2]  Accordingly, the Court will first determine whether Defendants are entitled to judicial notice of the document on which Defendants base their challenge to Plaintiff's compliance before evaluating whether Plaintiff properly alleges substantial compliance with the GCA.

1.  Request for Judicial Notice of Public Liability Claim Form

Rule 201 permits a court to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  "A fact is not subject to reasonable dispute if it is generally known, or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).

Defendants move the Court to take judicial notice of the "only" claim allegedly submitted by Plaintiff to the City of San Diego.  RJN at 3, 20–27 ("Claim Form").  Notably, Defendants' request provides no argument explaining why judicial notice of the Claim Form is proper under Rule 201, nor do Defendants make any representations to this Court as to the Claim Form's authenticity or completion. *See generally* RJN.

Plaintiff argues that judicial notice is improper because the Claim Form is "incomplete and thus misrepresents what the Defendants received as part of the timely TCA submission provided by Plaintiff."  ECF No. 12-1 at 9.  Specifically, Plaintiff argues

---

[2] The Court has no obligation to consider any arguments not properly pled in the parties' briefs, or to perform a *sua sponte* review the sufficiency of the allegations in the FAC. Thus, to the extent Defendants seek dismissal under Rule 12(b)(6) for reasons not stated in their Motion, the Motion is denied. *See* 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2015) ("All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

25-cv-0261-JAH

that the document is not what Defendants purport it to be because Defendants failed to include a letter that was submitted as part of Plaintiff's claim. *Id.* at 9. Plaintiff argues, "[t]o the extent the Court is going to take judicial notice and incorporate the online claim the Court should also consider the letter that was submitted with the online claim, attached as Exhibit A." *Id*.

Here, the Court's inability to verify the authenticity of the Claim Form creates a reasonable dispute as to the facts contained therein. On its face, the Claim Form provides an opportunity to upload supporting documents, and a document titled "2024.06.25_Tort Claim.pdf" appears in the attachment field at the end of the Claim Form submitted by Defendants. *See* RJN at 27. However, not only do Defendants fail to provide *any* attachment to their version of the Claim Form, Defendants fail to explain why their version omits the listed attachment.[3] Moreover, Defendants' objection that Plaintiff's proposed attachment lacks authentication and is hearsay, at best, falls short of a denial that the document is what it purports to be and fails to provide an alternative explanation as to the contents of the missing attachment. *See* Reply at 2. Thus, at a minimum, the Court agrees that the Claim Form appears incomplete on its face and finds that the missing attachment creates a reasonable basis to dispute whether the form produced by Defendants accurately reflects the complete submission. *See, e.g.*, *Cal. Sportfishing Prot. All. v. All Star Auto Wrecking, Inc.*, 860 F. Supp. 2d 1144, 1148–49 (E.D. Cal. 2012) (denying judicial notice where incompleteness created a reasonable basis to dispute whether the produced version

---

[3] It is also unclear how Defendants obtained a copy of the alleged Claim Form, or of the operative version of *any* claim allegedly submitted by Plaintiff to the City, given that submitted claims are not available to the public on the City of San Diego's website, the City liberally allows claimants to amend their claims with additional documentation after submission, and claims may be submitted with the City via submission of the Public Liability Claim Form using the online claims portal or by mailing or personally delivering a completed RM-9 form "or any written form that complies with the California Government Code" to the City. *See Services: Public Liability*, City of San Diego, https://www.sandiego.gov/riskmanagement/services/liability (last visited March 30, 2026).

25-cv-0261-JAH

accurately represents the complete record); *United States v. Boeing Co.*, 670 F. Supp. 3d 1185, 1194 (W.D. Wash. 2023) (same); *Jonathan King Speaks v. Looney*, 2026 WL 412948, at *3 (C.D. Cal. Feb. 9, 2026) (denying notice of documents "missing exhibits and therefore incomplete").

Moreover, even if the Claim Form was subject to judicial notice, Defendants seek judicial notice of the Claim Form to argue the facts contained therein establish that Plaintiff failed to comply with the requirements of the GCA. *See Khoja*, 899 F.3d at 999 ("[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth"). Taking these facts as true would create a version of events that directly contradict the facts pled in the FAC. Judicial notice exists to give courts a fuller picture of documents that form the basis of a plaintiff's claim—not to furnish a mechanism for introducing facts that contradict the pleadings at the dismissal stage. *Id.* (explaining that undermining the pleading burden by allowing defendants to "present their own version of the facts at the pleading stage . . . is not the purpose of judicial notice or the incorporation-by-reference doctrine"). While it is true a court may consider documents subject to judicial notice, this Court cannot take judicial notice of those documents for the truth of any matter asserted therein without first converting the motion into a Rule 56 motion and providing Plaintiff an opportunity to respond. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (internal citations omitted). Accordingly, the Court finds that Defendants improperly request judicial notice of facts subject to reasonable dispute.

In light of the foregoing, the Court DENIES Defendants' request to judicially notice the Claim Form. For the same reasons, the Court will not consider the Claim Form in assessing the sufficiency of Plaintiff's allegations regarding his compliance with the GCA. *See Daniels-Hall*, 629 F.3d at 998.

2. Compliance Under the California Government Claims Act

As an initial matter, the Court finds, and the parties agree, that under California law, "submission of a claim to a public entity pursuant to [the GCA] is a condition precedent to

25-cv-0261-JAH

a tort action and the failure to present the claim bars the action." *State of California v. Super. Ct. (Bodde)*, 90 P.3d 116, 120 (Cal. 2004) (internal citations and quotations omitted). "Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity." *Le Mere v. L.A. Unified School Dist.*, 247 Cal. Rptr. 3d 76, (Cal. Ct. App. 2019); *see also Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part.") (internal citation omitted). Thus, to state a claim for a tort action against a public entity or public employee under California law, "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *Bodde*, 90 P.3d at 123.

The GCA is not intended to function as a trap for plaintiffs who make a good faith effort to comply. *See Gen. Sec. Servs. Corp. v. Cnty. of Fresno*, 815 F. Supp. 2d 1123, 1133 (E.D. Cal. 2011) ("the statute should not be applied to snare the unwary where its purpose is satisfied") (internal citations omitted); *Nguyen v. Los Angeles Cnty. Harbor/UCLA Med. Ctr.*, 10 Cal. Rptr. 2d 709, 711 (Cal. App. 2d Dist. 1992), *modified* (Sept. 4, 1992) (explaining the GCA's purpose is "to provide a public entity with sufficient information to enable it to investigate . . . claims, assess liability, and … where appropriate, settle [] without the expense of litigation"). For this reason, dismissal for noncompliance with the GCA is warranted at the pleading stage where the inadequacy of compliance is apparent from materials properly before the court. *See* Cal. Gov. Code § 945.4; *Bodde*, 90 P.3d at 122. For example, this occurs where the complaint or an exhibit attached to it by the plaintiff is facially insufficient, such as where dates alleged in the complaint place the filing outside the statute of limitations period with no allegation of tolling or equitable estoppel. *See, e.g.*, *Julian v. City of San Diego*, 229 Cal. Rptr. 664, 175 (Cal. App. 4th Dist. 1986) ("Failure to commence an action within the prescribed period constitutes a valid ground for dismissal, absent waiver, estoppel or a tolling period."); *Frazier v. City of*

*Fresno*, 2023 WL 4108322, at *38 (E.D. Cal. June 21, 2023) (dismissing a late-filed claim). The Court finds no such defect in the FAC, nor do Defendants allege that one exists.

Here, the FAC alleges that Plaintiff timely submitted a tort claim by the statutory deadline, that the City acknowledged receipt of the claim, and that the City considered but rejected the claim. *See* FAC ¶¶ 16–18. Nothing alleged on the face of the FAC establishes that the submission was untimely, that Plaintiff failed to properly file a claim, or that the suit rests on an entirely different factual foundation from what was presented to the City. *See id*. On the contrary, the FAC alleges the claim was submitted pursuant to the GCA. Moreover, the Court rejects Defendants' argument as inappropriate at the motion to dismiss stage because the entire argument rests on the Court's consideration of the contents of the purported Claim Form to demonstrate that Plaintiff's claim described a different incident from the one giving rise to liability in this action. *See Lee*, 250 F.3d at 688 ("Indeed, actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."). Thus, in accepting all factual allegations in the FAC as true and construing all reasonable inferences in the light most favorable to Plaintiff, the Court finds the FAC alleges sufficient facts alleging Plaintiff's compliance with the GCA.[4]

Accordingly, Defendants' Motion to Dismiss Plaintiff's state law claims for failure to state a claim is DENIED.

**III.    Excessive Force Under 42 U.S.C. § 1983**

To plausibly state a claim for excessive force under 42 U.S.C. § 1983, Plaintiff must allege that a government official used force in the course of an arrest that was "objectively unreasonable" under the Fourth Amendment and that the official acted under color of state

---

[4] The Court does not reach the merits of Plaintiff's compliance with the GCA here. Whether Plaintiff's submission substantially complied with the GCA remains open for resolution on a more developed record. Specifically, the Court will address issues regarding the correct Claim Form, the sufficiency of its contents, and Plaintiff's argument that the City's failure to identify any deficiencies within twenty days operated as a waiver by Defendants under Cal. Gov. Code § 910.8 at the proper evidentiary stage of this proceeding and upon review of adequate offers of proof by both parties.

25-cv-0261-JAH

law. *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989). As a threshold matter, the FAC alleges, and Defendants do not dispute, that Officer Edwards acted under color of state law. FAC ¶¶ 24, 85. Officer Edwards was on duty as an SDPD officer, responded to the traffic stop in that capacity, and deployed Magnus pursuant to his authority as a K-9 handler. *Id.* Thus, the Court finds the FAC properly alleges facts in support.

Because "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," courts must evaluate the totality of the circumstances of each particular case. *Graham*, 490 U.S. at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). *Graham* identified three primary factors: the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* (internal citation omitted). The Ninth Circuit has further elaborated that courts must consider the type and amount of force used, the importance of the government interests at stake, and the balance between those interests and the individual's Fourth Amendment right to be free from unreasonable intrusion. *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003).

Here, Defendants' Motion provides no arguments explaining why Plaintiff's allegations fail to state a claim under Rule 12(b)(6). *See generally* Mot. Rather than identifying any deficiencies in the FAC, Defendants' Motion prematurely asks this Court to weigh the elements of Plaintiff's claim for excessive force and consider evidence outside of the pleadings, under the incorporation-by-reference and judicial notice doctrines, to evaluate the merits of Plaintiff's claim. Mot. at 11. For example, Defendants spend five pages applying the excessive force factors set forth in *Graham* to argue the Court should find, *inter alia*, "that the intrusion was moderate because Officer Edwards did not allow Magnus to bite Plaintiff for a prolonged period or while unattended," the *Graham* factors "weigh[] heavily in favor of Officer Edwards," and "Magnus's bite to Plaintiff's forearm is outweighed by the reasonable need for the government to apprehend felony suspects." *Id*. at 13–19. The Motion reads more like a motion for summary judgment and Defendants

25-cv-0261-JAH

even cite to the summary judgment standard as the basis for dismissal:

> Moreover, the Supreme Court held, **in the context of a motion for summary judgment**, that a court should not adopt the plaintiff's version of events when it is "so utterly discredited by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (discussing the discrepancies between the plaintiff's claims and evidence versus a video of a pursuit). Under *Scott v. Harris*, Plaintiff's fictitious recitation of facts in his Complaint should be disregarded and/or augmented by the BWC footage.

Reply at 6 (emphasis added).

To the extent Defendants seek to convert their motion to dismiss to a motion for summary judgment under Rule 56, the Court declines the request at this stage of the litigation. Although both parties here have submitted evidence outside the pleadings and acknowledged that the Motion could be converted under Rule 12(d), the Court finds conversion of the Motion to dismiss into one for summary judgment is inappropriate here given that the parties are still early in the discovery process and any evidence submitted by the parties in support of this Motion is "minimal, incomplete, and unnecessary." *See Barnes v. Sea Hawai'i Rafting, LLC*, 493 F. Supp. 3d 972, 976-77 (D. Haw. 2020), *aff'd sub nom. Barnes v. Kris Henry, Inc.*, 2022 WL 501582 (9th Cir. Feb. 18, 2022) (finding it inappropriate to convert motion to dismiss to motion for summary judgment and collecting cases); *Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003) (holding that the district court properly declined to review evidence and convert motion because the submitted evidence was "superfluous because the non-moving party does not have to substantiate its allegations; the Court presumes everything it claims is true anyway").

Defendants also misstate the standard under Rule 12(b)(6) and expressly admit they submit to this Court's consideration materials beyond the pleading—a police report, Google map printout, and body-worn camera footage[5]—to impermissibly present their own

---

[5] Defendants request that the Court incorporate by reference six BWC footage exhibits and

25-cv-0261-JAH

version of the facts at the pleading stage:

> Here, the exhibits in Defendants' Request for Judicial Notice and Incorporation by Notice, including police report, Google map, and body-worn camera (BWC) footage, **flatly contradict the allegations in the Complaint**.
>
> …
>
> With this information, it is abundantly clear that Plaintiff's complaint is blatantly contradicted by the Google map, police report, and BWC footage. All allegations in the complaint that do not comport with that undisputable evidence must be stricken in deciding this motion. **Without the clearly contradicted allegations, the conclusory allegations, and the legal conclusions dressed and [sic] factual allegations, Plaintiff does not present a plausible claim for excessive force**.
>
> Moreover, the remaining facts demonstrate that Officer Edwards' use of force was constitutional under the *Graham* standards.

Reply at 7; RJN at 3–19. This is not the standard under Rule 12(b)(6). Nor can this Court permit "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint [which] risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998. "Such undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine." *Id.* at 999 ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief."). As previously discussed, judicial notice exists to give courts a fuller picture of documents that form the basis of a plaintiff's claim—not to furnish a mechanism for introducing facts that contradict the pleadings at the dismissal stage. *Id.*

Ultimately, Defendants' arguments in support of their Motion make it abundantly clear that Plaintiff alleges sufficient facts to state a claim for excessive force. Defendants'

---

Officer Watson's Arrest Report, as well as judicially notice a Google Map illustrating the geography of both the December 30, 2023, incident and the Subject Incident. RJN at 2–3.

25-cv-0261-JAH

concession in their Reply lands a fatal blow to Defendants' Motion under the Rule 12(b)(6) standard: "*once the Court disregards the blatantly contradicted facts in the complaint*, there is insufficient facts to state this claim." Reply at 11. Thus, based on Defendants' admissions, Plaintiff's arguments in support, and in accepting all factual allegations in the FAC as true and construing all reasonable inferences in the light most favorable to Plaintiff, the Court finds the FAC alleges sufficient facts to state a claim for excessive force under 42 U.S.C. § 1983.[6]

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's claim for excessive force under 42 U.S.C. § 1983.

In light of the foregoing, the Court declines to consider Defendants' request for judicial notice and incorporation-by-reference of the police report, the Google map, and body-worn camera footage as the request is moot. *See Ritchie*, 342 F.3d at 907–08; *Daniels-Hall*, 629 F.3d at 998.

**IV.   Qualified Immunity**

Defendants move to dismiss all civil claims against Officer Edwards based on their argument that Officer Edwards is entitled to qualified immunity. Mot. at 19.

"Qualified immunity shields an official from damages in a civil suit unless the plaintiff can make the showing that the official's actions violated a constitutional right, and that the right was 'clearly established' at the time of the violative conduct." *Sanderlin v. Dwyer*, 116 F.4th 905, 910 (9th Cir. 2024) (quoting *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S.

---

[6] The Court reiterates it has no obligation to consider any arguments not properly pled in the parties' briefs. Thus, to the extent Defendants seek dismissal under Rule 12(b)(6) for deficiencies not stated in their Motion, the Motion is denied. *See supra* note 2.

25-cv-0261-JAH

223, 231 (2009).

"When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Id.* at 238-9 (internal citations omitted). Thus, qualified immunity determinations at the motion to dismiss stage are only appropriate in narrow circumstances, as the facts are construed in Plaintiff's favor and constitutional determinations in a factual vacuum pose special risks. *Id.* at 239 (disfavoring qualified immunity determinations at the pleadings stage because "whether there was a violation may depend on a kaleidoscope of facts not yet fully developed").

Courts evaluating a government officials' claim for qualified immunity consider: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may address these questions in either order "in light of the circumstances in the particular case at hand." *Id.* at 236.

Here, as the first prong, the Court has already held that Plaintiff plausibly alleges sufficient facts to state a claim for violations of his Fourth Amendment right to be free from excessive force. *See supra* section III. Specifically, Defendants admit—albeit via a challenge on the merits—that the FAC alleges facts showing how, under *Graham*, Officer Edwards' K-9 deployments constituted objectively unreasonable force. Aside from their factual challenge to the version of events alleged in Plaintiff's FAC, Defendants do not otherwise identify an independent basis for challenging the sufficiency of Plaintiff's claim alleging a constitutional violation. *See* Mot. at 19 ("As discussed above, the Court should find that Officer Edwards did not violate Plaintiff's Fourth Amendment rights."). As discussed, such factual challenges are not considered to determine whether Plaintiff plausibly alleges a claim under the standard contemplated by Rule 12(b)(6). Accordingly, the Court finds that Plaintiff has alleged sufficient facts to state a claim for a violation of a constitutional right on the record properly before the Court at this stage of the litigation. The Court now turns to the second prong.

25-cv-0261-JAH

As to the second prong, the right to be free from objectively unreasonable K-9 force[7]—including successive K-9 deployments after a suspect has surrendered, is already on the ground, or pinned by multiple officers—was clearly established in this Circuit at the time of the Subject Incident. *See generally Graham*, 490 U.S. at 396 (discussing use of force against a plaintiff during an investigatory stop); *see also, e.g., Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (reversing summary judgment in favor of officer and finding a genuine issue of material fact as to the reasonableness of the K-9 force where the suspect claimed he attempted to surrender upon encountering the police dog and repeatedly asked officers to call it off); *Smith v. City of Hemet*, 394 F.3d 689, 701–02 (9th Cir. 2005) (denying summary judgment in finding sufficient evidence that K-9 force was excessive where the plaintiff had already been pinned to the ground by multiple officers); *cf. Miller*, 340 F.3d at 965–66) (affirming district court's holding that K-9 force was reasonable where the suspect was a fugitive felon reasonably believed to be armed). Particularized prior case law is not required to put a reasonable officer on notice that continued K-9 force against a compliant, subdued suspect is unlawful. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) ("No particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under

---

[7] Plaintiff's Fourth Amendment claim is based on alleged violations of Plaintiff's "right to freedom of movement," "freedom from unreasonable seizures," and the "right to be free from the use of excessive force." FAC ¶¶ 71–72. In support, the FAC alleges, *inter alia*, that Plaintiff was unarmed, had both hands visible, had already surrendered, and had more than six officers pointing firearms at Plaintiff when Officer Edwards "ordered his K-9 to repeatedly attack and violently gnaw" at Plaintiff. FAC ¶¶ 74–83. Although Defendants' Motion addresses only the K-9 force, Plaintiff clarifies that he "does not concede the reasonableness of the officers' conduct in drawing their weapons at Plaintiff, but chooses not to analyze that use of force for the purposes of Plaintiff's opposition to the motion to dismiss since officers' use of force went well above and beyond the drawing of weapons." Opp'n at 28 n.6. Accordingly, the Court notes that the facts in support of Plaintiff's Fourth Amendment claim are not limited to Officer Edwards' use of K-9 deployments.

25-cv-0261-JAH

control."); *Chew*, 27 F.3d at 1447 (same). Thus, a reasonable officer would have known that continuing to deploy K-9 force against a suspect on the ground with multiple officers physically restraining him was constitutionally prohibited.

Defendants' qualified immunity argument rests primarily on the assertion that Defendants' factual account of events—rather than Plaintiff's—accurately depicts what occurred. As discussed, factual disputes between the parties cannot provide the basis to undermine a claim at the motion to dismiss stage. *Khoja*, 899 F.3d at 998; *Lee*, 250 F.3d at 688. Grey areas in the law may support a qualified immunity defense, but disagreements about the facts do not. *See Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 968 (9th Cir. 2010) (noting qualified immunity is a "pure question of law") (internal citations and quotation marks omitted); *see also Stephenson v. California*, 761 F. Supp. 3d 1242, 1261 (C.D. Cal. 2025), *appeal dismissed sub nom. Stephenson v. McKee*, 2025 WL 1143493 (9th Cir. Apr. 8, 2025) (at the summary judgment stage, defendants are "only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [Plaintiff], they violated no clearly established constitutional right") (internal citation omitted); *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018), *cert. denied sub nom. Thompson v. Copeland*, 586 U.S. 947 (2018) (citing *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) (holding "if genuine issues of material fact [at the summary judgment stage] prevent a determination of qualified immunity, the case must proceed to trial"). Moreover, because all reasonable inferences must be drawn in Plaintiff's favor at this juncture, any factual uncertainty regarding the circumstances of the K-9 deployments resolves in Plaintiff's favor.

Thus, accepting all factual allegations in the FAC as true and construing all reasonable inferences in the light most favorable to Plaintiff, the Court finds that Defendants fail to establish that Officer Edwards is entitled to qualified immunity.

Accordingly, Defendants' Motion to Dismiss Plaintiff's claims as to Officer Edwards on the basis of qualified immunity is DENIED.

//

25-cv-0261-JAH

<u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED:

1. Defendants' Motion to Dismiss Count 1 (Excessive Force under 42 U.S.C. § 1983) is **DENIED**.

2. Defendants' Motion to Dismiss Count 2 (Bane Act) is **DENIED**.

3. Defendants' Motion to Dismiss Count 3 (Assault) is **DENIED**.

4. Defendants' Motion to Dismiss Count 4 (Battery) is **DENIED**.

5. Defendants' Motion to Dismiss Count 5 (Negligence) is **DENIED**.

6. Defendants' Request for Judicial Notice and to Incorporate by Reference is **DENIED**.

IT IS SO ORDERED.

DATED: March 30, 2026

_____

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

25-cv-0261-JAH